NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Bankruptcy Case No. 05-33096 |
| MICHAEL LLEWELYN BARNABY | Chapter 7 |
| Debtor. | |
| WILLIAM AND LORRAINE MCLEOD | |
| Plaintiffs | |
| vs. | Adversary No. 05-6051 |
| MICHAEL LLEWELYN BARNABY | |
| | **MEMORANDUM OPINION** |
| Defendant | **Trial Date: January 31, 2007** |

**APPEARANCES**

John F. Bracaglia, Jr., Esquire
Cohn, Bracaglia & Gropper
275 East Main Street - PO Box 1094
Somerville, New Jersey 08876
Attorney for Plaintiff

Henry Gurshman, Esquire
10 Station Place - Suite 17
PO Box 566
Metuchen, New Jersey 08840-0566
Attorney for Defendant

**KATHRYN C. FERGUSON, U.S.B.J.**

Facts

William F. and Lorraine McLeod seek a determination of non-dischargeability against Michael Barnaby under 11 U.S.C. § 523 (a)(2)(A).[1] They allege that they entered into a contract with Mr. Barnaby for construction of certain improvements to their home for $216,300 to be paid in three installments. The McLeods acknowledge that they made the first payment and that Mr. Barnaby commenced construction. They allege that shortly thereafter they became dissatisfied with the quality and pace of the work and asked Mr. Barnaby for a status report before they would make the second installment payment. As a result, Mr. Barnaby provided a disbursement listing and some backup documentation. The McLeods say that the information that Mr. Barnaby provided was materially false, intended to dupe them into advancing additional funds and that they would not have tendered the second payment if the information provided had been truthful. The McLeods assert that the second payment of 72,100 should not be discharged because it was procured by fraud. Mr. Barnaby acknowledges almost everything alleged by the McLeods, but denies any fraudulent intent. He claims that at the time of the second payment he fully intended to complete the contract, but was unable to do so. Mr. Barnaby describes what happened as a simple breach of contract rather than fraud.

Discussion

Section 523(a)(2)(A) provides that "[a] discharge under section 727... does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud

---

[1] The Complaint alleged causes under 11 U.S.C. § 523(a)(2) generally as well as a claim under the New Jersey Consumer Fraud Act, but the Plaintiffs clarified at trial that they were pursuing a cause under § 523(a)(2)(A) only.

2

...."[2] As in all § 523 cases, the burden of proof is on the creditor to show all of the elements of § 523(a)(2)(A) by preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 288-89 (1991). All of the elements of § 523(a)(2)(A) must be established in order for the plaintiff to prevail. Starr v. Reynolds, 193 B.R. 195 (D.N.J. 1996).

The statute provides three options for proving a debt non-dischargeable: "false pretenses," "false representations," and "actual fraud." Courts have held that "the use of the subjunctive "or" demonstrates they embody somewhat different concepts." In re Hambley, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005). *See also*, In re Soliz, 201 B.R. 363, 369 (Bankr. S.D.N.Y. 1996)("The use of the disjunctive "or" evidences that Congress intended to deny a discharge under any one of the three types of mischief referred to."); In re Marc Leventhal (Colonial National Bank USA v. Leventhal), 194 B.R. 26, 28 (Bankr. S.D.N.Y. 1996) ( "Section 523(a)(2)(A) speaks of 'false pretenses, a false representation, or actual fraud', evidencing a statutory distinction among the three"); *Contra*, In re Miller, 310 B.R. 185, 201-02 (Bankr. C.D. Cal. 2004) ("the terms 'false pretenses' and 'false representation' have the same meaning in § 523(a)(2)(A) as the term 'actual fraud.'") So for the purposes of this opinion the Court will examine whether the Plaintiffs have made out a case under any of the three options in § 523(a)(2)(A).

The first option is to establish that the debt was incurred by "false pretenses." Courts have defined that term to mean "conscious deceptive or misleading conduct calculated to obtain, or

---

[2] The statute does not encompass statement respecting the debtor's or an insider's financial condition. Although there are different views of what constitutes a "statement respecting the debtor's ... financial condition," *see,* In re Joelson, 427 F.3d 700, 704 (10th Cir. 2005), the statements at issue here do not fit neatly within any of those definitions, in that they are statements limited to expenditures on this particular project rather than on Mr. Barnaby's general financial position.

deprive, another of property." In re Kovler, 249 B.R. 238, 261 (Bankr. S.D.N.Y. 2000)).  To establish that a debt was incurred by false pretenses, the Plaintiffs must establish: "(1) an implied misrepresentation or conduct by the defendants; (2) promoted knowingly and willingly by the defendants; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiffs; (4) which wrongfully induced the plaintiffs to advance money, property, or credit to the defendant."  In re Hambley, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005).

For a court to find a debt nondischargeable based on a "false representation" the Plaintiffs must prove that the Debtor "(1) made a false or misleading statement; (2) with the intent to deceive; and (3) in order for the plaintiffs to turn over money or property to the defendants." In re Hambley, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005).  To support a finding of a false representation under § 523(a)(2)(A) it is sufficient to show that the debtor made "false or misleading statement about something, usually with the intent to deceive." In re Dobrayel, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002) (citing Black's Law Dictionary 619 (7th ed.1999)).

For a court to find a debt nondischargeable based on "actual fraud" the Plaintiffs must establish the classic "five fingers of fraud."  Dobrayel at 12.  In other words, the Plaintiffs must prove that: 1) debtor made a material false representation; 2) at the time the debtor knew it was false or showed reckless disregard for its truth; 3) the representation was made with the intent to deceive plaintiff; 4) plaintiff justifiably relied on the representation; and 5) plaintiff sustained a loss as a result of the representation. Field v. Mans, 516 U.S. 59 (1995); In re Crim, 149 Fed.Appx. 427, 430 (5th Cir. 2005).

Notably, intent is an element under each aspect of § 523(a)(2)(A).  "Proof of intent to deceive is measured by the debtor's subjective intention at the time the representation was made."

In re Curtis, 2006 WL 1506209, at *8 (Bankr. C.D. Ill. May 24, 2006). Frequently courts must consider circumstantial evidence regarding the debtor's intent "[b]ecause a debtor rarely, if ever, admits to acting with the intent to deceive". In re Catherman, 331 B.R. 333 (Bankr. N.D. Ohio 2005). "[A]ny subsequent conduct that is contrary to the original representation does not necessarily indicate that the original representation was false." In re Bowden, 326 B.R. 62, 87 (Bankr. E.D. Va. 2005). "Subsequent inconsistent conduct, although admissible as circumstantial evidence or prior intent, does not necessarily control the determination of whether the debtor had intent to deceive, for non-dischargeability purposes." In re Green, 296 B.R. 173 (Bankr. C.D. Ill. 2003) In addition, the issue of intent must be resolved in favor of the debtor where there is room for inference of honest intent. In re Joelson, 427 F.3d 700, 712 (10th Cir. 2005).

As is typical in these cases, Mr. Barnaby testified that he did not intend to mislead or defraud the McLeods, so the Court must look to circumstantial evidence to ascertain intent. The McLeods primarily rely upon the fact that the documentation provided included funds not yet expended Indeed, the Project Update dated November 21, 2003 [P-2] suggests on its face that Mr. Barnaby had actually expended $75,473.24 as of that date. As the testimony of both parties made clear, that was not the case. The problem with the McLeods's analysis is that the backup documentation supplied at the same time [P-3] did not indicate that all of the funds identified in the Project Update had been paid. Some of the backup documentation is clearly receipts or invoices marked "Paid Cash." Others are merely invoices, different on their faces than those marked "paid." Mr. Barnaby explained at trial that the Project Update was intended to reflect expenses allocated to this project that he was committed to pay, not expenses already paid. His explanation is consistent with the documentation submitted, and does not support an inference of intent to defraud.

Additionally, both parties testified that Mr. Barnaby continued to do work at the project site. While the Court accepts for the purposes of argument that the work was progressing slowly and in an unworkmanlike manner, the fact that Mr. Barnaby continued to work on the project until the McLeods terminated the contract does not support an inference of fraudulent intent.

The difficulty here seems to be that Mr. Barnaby's services were unsatisfactory to the McLeods almost from the beginning of the project. The undisputed testimony about the inferior quality of the services rendered and the snailish pace of services leaves the Court quite sympathetic to the frustrations of the McLeods. They were left in that situation, however, because of the manner in which the initial contract [P-1] was drafted. The contract is not at all ambiguous that the second payment was to be made after the first inspection. The McLeods may not have been aware of the inspection schedule, but the undisputed testimony is that the first inspection had occurred well prior to the second payment. Although they were not entitled to them, the McLeods very understandably wanted additional assurances. That request seems to be where the parties failed to communicate. Mr. McLeod testified that he asked for "an accounting" and on cross-examination testified that he assumed that the Project Update reflected amounts actually paid because Mr. Barnaby provided that document in response to Mr. McLeod's request for "what he paid."  Mr. Barnaby testified that Mr. McLeod had asked for a "breakdown."  Unfortunately, the request for the additional documentation as a prerequisite to the second payment was apparently not in writing, or at least no writing was produced. The Project Update may not have been what Mr. McLeod was expecting, but it is difficult to infer that Mr. Barnaby deliberately and intentionally provided the answer to a different question with the intent to defraud when the request for information was so loosely and informally phrased .

There are also questions about the reasonableness of the McLeods reliance on a voluntary disclosure of information that was at most ambiguous about the payment status, but the Court need not get to those issues. The McLeods had the burden to establish each element under § 523 (a)(2)(A), and have failed to establish intent to defraud, or even that the statements were actually misrepresentations. Although they have a claim for actual damages for breach of contract, that claim must be satisfied by the Chapter 7 estate. It cannot be excepted from discharge.

Counsel for Mr. Barnaby shall submit a form of judgment dismissing the complaint.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: March 6, 2007